# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FRANKIE DEAN THOMAS,

                Plaintiff,

      v.

COMPTROLLER OF THE CURRENCY,

              Defendant.

Civil Action No. 09-794 (HHK)

## MEMORANDUM OPINION

This action is brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Before the Court is defendant's motion to dismiss or, in the alternative, for summary judgment.[1]

Upon consideration of the motion, the opposition thereto, and the record of this case, the Court

concludes that defendant's motion for summary judgment should be granted.

## I.   BACKGROUND

In December 2008, plaintiff submitted a FOIA request to the Comptroller of the Currency

seeking "various bonding information" relating to himself.  Def.'s Mot. to Dismiss or, in the

Alternative, for Summ. J. ("Def.'s Mot."), Ex. A ("Vance Decl.") ¶ 3.  He specifically sought

nine categories of documents:

    (1)      the bonding information and registration and the name of the
             transfer agent related to [plaintiff] and criminal case number
             1:CR-96-297-03,

---

[1]    The Court construes plaintiff's "Request for Proof of Claim" [Dkt. #15] and his "Affidavit of Truth" [Dkt. #15-1] together as his opposition to defendant's motion to dismiss or for summary judgment.

(2)     GSA Form SF273 (Reinsurance Agreement for a Miller Act Performance Bond),

(3)     GSA Form SF274 (Reinsurance Agreement for a Miller Act Payment Bond),

(4)     GSA From SF275 (Reinsurance Agreement in Favor of the United States) under the [Office of the Comptroller of the Currency] and the General Accounting Office,

(5)     the signed and certified verification of assessment and names and contact information of the registered public accounting firm and auditor that assessed the charges, credentials, and oath,

(6)     "State 28-E agreements" between states and the Federal Government to secure grants from the Federal government and to insure states' compliance with Federal law,

(7)     an explanation of how the "United States Bar Association" has standing in any of the three branches of government,

(8)     an explanation of how the "United States Securities Act RCW 21.20" permits United States District Judge Sylvia H. Rambo or Assistant United States Attorney Eric Pfisterer to secure a bond in [plaintiff's] name without his knowledge or authorization and permits a prosecuting attorney to act as "investment adviser representative," and

(9)     specific information regarding United States District Judge Sylvia H. Rambo and Assistant United States Attorney Eric Pfisterer.

*Id*.; *see* Plaintiff's Exhibits ("Pl.'s Ex.") [Dkt. #16], Ex. A (Freedom of Information Act/Request for Investigation/Counter Claim for Forfeiture of Bond) at 2-4 (page numbers designated by the Court).  By letter dated December 23, 2008, the Office of the Comptroller of the Currency ("OCC") acknowledged receipt of plaintiff's request, Vance Decl. ¶ 4, and set January 27, 2009, as its response deadline.  Pl.'s Ex., Ex. B (December 23, 2008 letter from F.D. Vance, Jr., Manager, Disclosure Services and Administrative Operations, Communications Division, OCC).

By letter dated February 3, 2009, the OCC sent plaintiff a letter informing him "that the OCC maintains its records by the name of the national bank under supervision."  Vance Decl. ¶ 5.  For this reason, plaintiff was instructed "to provide the name of a national bank for the OCC

to search for the documents he requested." *Id.*; *see also id.* ¶ 8.  Although the letter was sent to

plaintiff at his correct address, the letter "referred incorrectly to his prisoner register number as

8646-067, instead of 08648-067." *Id.* ¶ 5.  On February 27, 2009, this letter "was returned . . .

because the recipient was not known." *Id.* ¶ 7.  Plaintiff sent the OCC a letter dated February 11,

2009 stating that he had not received a response to his FOIA request.  *Id.* ¶ 6.

On February 27, 2009, the OCC sent plaintiff another letter "stating that the OCC

maintains its records by the name of the national bank under supervision and requesting the name

of a national bank to search for the documents he requested."  Vance Decl. ¶ 8.  Included was a

copy of the February 3, 2009 letter.  *Id.*  The OCC sent this correspondence to plaintiff at the

correct address and listed the correct prisoner register number.  *Id.*  However, according to

plaintiff's March 2, 2009 letter to the OCC, he still had not received a response to his FOIA

request.  *Id.* ¶ 9.  Plaintiff brings this action in order to obtain the requested records.  Compl. at 2.

## II.   DISCUSSION

### A.  Summary Judgment in a FOIA Case

The Court may grant a motion for summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the

moving party's affidavits may be accepted as true unless the opposing party submits his own

affidavits, declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453,

456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment."

*Defenders of Wildlife v. United States Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)

(citations omitted).  In a FOIA case, the Court may grant summary judgment based on the

information provided in an agency's supporting affidavits or declarations when they describe

"the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or

declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'"  *SafeCard*

*Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground*

*Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

B.  Plaintiff Constructively Exhausted His Administrative Remedies

Before seeking judicial review under FOIA, a requestor of information is generally

required to exhaust his  administrative remedies.  *Wilbur v. Cent. Intelligence Agency,* 355 F.3d

675, 677 (D.C. Cir. 2004) (per curiam).  Exhaustion allows "the agency . . . an opportunity to

exercise its discretion and expertise on the matter and to make a factual record to support its

decision."  *Id.* (quoting *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 61 (D.C. Cir.

1990)).  Exhaustion under FOIA is not a jurisdictional requirement, *Hidalgo v. Fed. Bureau of*

*Investigation,* 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration.

*Wilbur,* 355 F.3d at 677.  If a requester has not exhausted his administrative remedies prior to the

filing of a civil action, his claim is subject to dismissal.  *See Hidalgo*, 344 F.3d at 1258.

FOIA requires an agency to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [a] request whether to comply with such request[.]" 5 U.S.C. § 552(a)(6)(A)(i).  In "extraordinary circumstances," this time limit "may be extended by written notice to the [requester] setting forth unusual circumstances for such extension and the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B)(i).  If the agency does not meet its deadline, "the requester can immediately sue to obtain the requested records and he 'shall be deemed to have exhausted his administrative remedies' because of the agency's tardiness." *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (quoting 5 U.S.C. § 552(a)(6)(C)); *see Oglesby*, 920 F.2d at 62 ("If the agency has not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit."). However, this so-called "constructive exhaustion ceases to offer a basis for judicial action once an agency actually responds."  *Smith v. Fed. Bureau of Investigation*, 448 F. Supp. 2d 216, 220 (D.D.C. 2006) (citing *Oglesby*, 920 F.2d at 61, 63-64).  "If a requester actually receives an agency's untimely response before filing suit under § 552(a)(6)(A)(i), he must utilize the administrative appeals process – which includes, as a final step, the right to sue in federal court – to resolve any FOIA disputes." *Judicial Watch*, 285 F. Supp. 2d at 26.

The OCC argues that, because "[p]laintiff did not pursue the available administrative process before seeking remedy in this Court[,]" and because he "brings this action after [defendant] has responded to his FOIA request," plaintiff must now pursue one of two options: file an administrative appeal, or provide the name of a national bank so that the OCC can process his request.  Def.'s Mot. at 6.  Plaintiff counters that the OCC "defaulted on [its] own prescribed due date of January 27, 2009," such that he "is entitled to the records/documents requested as a

result of the default[.]" Pl.'s Aff. [Dkt. #15-1] at 3. Plaintiff essentially argues that he has constructively exhausted his administrative remedies due to the OCC's failure to make its initial determination within the time limits set forth in the FOIA.

In this case, the parties do not dispute two relevant facts: the OCC did not make its initial determination on or before January 27, 2009, and plaintiff did not receive defendant's February 3, 2009 and February 27, 2009 letters. Where, as here, "a bureau of the Department of the Treasury fails to comply with the time limits specified . . ., [the requester] . . . shall be considered to have exhausted administrative remedies with respect to the request." 31 C.F.R. § 1.5(k).

C.  Defendant's Refusal to Conduct a Search Was Reasonable Under the Circumstances

In the alternative, defendant argues that it was not required to conduct a search of its files for records responsive to plaintiff's FOIA request because such records were "not likely to be maintained in its record-keeping systems." Def.'s Mot. at 6. Plaintiff counters that his "request does meet all procedural requirements," Pl.'s Aff. at 2 (emphasis in original), set forth by statute and by the applicable regulations for submission of a FOIA request to a bureau of the Department of the Treasury. *Id.* Defendant's position has merit.

The OCC "is a bureau of the [United States Department of the Treasury] that functions as the primary supervisor for all national banks, as well as all federal branches and agencies of foreign banks in the United States." Vance Decl. ¶ 2. It "administers statutory provisions governing virtually ever aspect of the national banking system[.]" *Id.* Among other functions, the OCC charters new national banks, appoints conservators or receivers for failed national banks, and initiates civil enforcement actions against national banks, their officers, directors, and employees. *Id.*

Records pertaining to the OCC's supervisory responsibilities "are organized and maintained under the name and charter number of the national bank or federal branch or agency of a foreign bank to which they relate."  Vance Decl. ¶ 10.  Its records include: bank charter applications, branch applications, other licensing applications, supervisory reports of examination, supervisory correspondence, internal supervisory memoranda, civil enforcement actions, consumer complaints and inquiries, and FOIA requests.  *Id.*  In addition, the OCC maintains records about its personnel, procurement, building security, telephone, credit card and computer usage, and other administrative matters.  *Id.*

The OCC determined that "only those records . . . organized by the name of a supervised national bank, federal branch, or agency could potentially contain the information [plaintiff] was seeking."  Vance Decl. ¶ 11.  Because plaintiff's request provided no information "from which [the OCC] could reasonably infer the name of the supervised national bank, federal branch, or federal agency related to his request[,]" the OCC determined that it could not conduct a search "because there was no reasonable expectation of finding responsive documents."  *Id.*  Accordingly, the OCC neither searched its records nor released any records responsive to plaintiff's FOIA request, and it could not do so unless he "provide[d] the additional information . . . sought . . . in its letters dated February 3, 2009 and February 27, 2009."  *Id.* ¶ 12.

"[A]gencies are not required to maintain their records or perform searches which are not compatible with their own document retrieval systems."  *Assassination Archives & Research Ctr., Inc. v. Cent. Intelligence Agency*, 720 F. Supp. 217, 219 (D.D.C. 1989) (citation omitted), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (per curiam).  Assuming without deciding that plaintiff complied with all applicable regulations for submission of a FOIA request

to the OCC, it is clear that the information he requested is not the type of information the OCC

maintains.  Moreover, because the OCC's files are arranged by the name of the supervised

national bank, federal branch or agency, defendant could not reasonably be expected to conduct a

search of its records without the name of such an entity.  To the extent that plaintiff's FOIA

requests were questions or requests for explanations of policies or procedures, these are not

proper FOIA requests requiring the OCC's response.  *See Zemansky v. Envtl. Prot. Agency*, 767

F.2d 569, 573 (9th Cir. 1985) (affirming grant of summary judgment on requester's counterclaim

which sought declaration of agency's obligation under FOIA to generate documents explaining

its policies and actions); *Astley v. Lawson*, No. 89-2806, 1991 WL 7162, at *2 (D.D.C. Jan. 11,

1991) (finding that plaintiff's requests concerning previous agency assignments of two FBI

agents were questions disguised as FOIA requests to which FBI need not respond).

### III.   CONCLUSION

The Court concludes that the OCC fulfilled its obligations under the FOIA.  Its response

to plaintiff's FOIA request, that is, its decision not to conduct a search for records, was

reasonable under the circumstances.  Accordingly, the Court will grant defendant's motion for

summary judgment, and will deny its motion to dismiss as moot.  An appropriate Order is issued

separately.


                                        HENRY H. KENNEDY, JR.
                                        United States District Judge

DATE: February 16, 2010